STOWE v. HARTFORD FAIR GROUNDS ASS'N.

1. AGRICULTURE—CORPORATIONS—WHERE OFFICERS OF CORPORATIONS
ARE SAME TRANSACTIONS BETWEEN THEM SHOULD BE SCRUTINIZED.
> In suit by stockholder for cancellation of lease between fair
grounds association, organized for profit under Act No. 232,
Pub. Acts 1903, and amendatory acts, and agricultural so-
ciety, organized as nonprofit corporation to carry out pur-
poses of former corporation, where officers of both corporations
were same, and lease was signed on behalf of each company
by same officers, law should carefully scrutinize dealings be-
tween them.

2. SAME—DEALINGS BETWEEN CORPORATIONS FAIR.
> Testimony *held*, to show that dealings between said fair associa-
tion and agricultural society were absolutely honest, fair,
and for benefit of each party, and that former corporation
was able to carry out purposes for which it was organized
only through medium of latter corporation.

3. SAME—STOCKHOLDER ENTITLED TO BRING SUIT.
> One who purchased certificates of stock in fair grounds associa-
tion indorsed in blank, who had been allowed to vote at
stockholders' meetings, and whose name had been written in
stock book of corporation, has right to bring suit to cancel
alleged void lease executed by corporation, and for account-
ing, although no new stock had ever been issued to him.

4. SAME—LEASE FOR NOMINAL RENTAL VOID WHERE IT AMOUNTS TO
SALE OF ASSETS WITHOUT ACTION BY STOCKHOLDERS.
> Where fair grounds association was organized for profit, lease
of its grounds for rental of $1 per year and payment of taxes,
upkeep, and insurance on buildings for 25 years to agricultural
society organized to carry on fair and further purposes of
former association, which it could do because as nonprofit
corporation it received subsidies from county and State and
was relieved from payment of taxes, was void, although con-
sideration was adequate and proper, since this would preclude
fair grounds association from realizing profit at some future
time, and especially in view of fact that officers of both
corporations were same and said action amounts to sale of
its assets without action of stockholders.

5. Same—Cancellation of Instruments—Equity.

  Stockholder in fair association, although entitled to have lease for 25 years canceled, is not entitled to accounting or further relief, where purposes of association are being carried out, and its affairs are fairly and honestly conducted.

Appeal from Van Buren; Warner (Glenn E.), J. Submitted October 9, 1929. (Docket No. 27, Calendar No. 34,444.) Decided December 4, 1929.

Bill by Stephen Stowe against Hartford Fair Grounds Association, a Michigan corporation, and Van Buren Agricultural Society, a Michigan corporation, for cancellation of a lease, an accounting, dissolution of first-named defendant, and appointment of a receiver. From a decree for defendants, plaintiff appeals. Affirmed.

*Jackson, Fitzgerald & Dalm,* for plaintiff.

*W. J. Barnard,* for defendants.

Butzel, J. Defendant Hartford Fair Grounds Association was incorporated June 7, 1912, under the provisions of Act No. 232, Pub. Acts 1903 (2 Comp. Laws 1915, § 9017), and the acts amendatory thereof and supplemental thereto (Act No. 254, Pub. Acts 1917). Although organized under the law providing for incorporation of manufacturing and mercantile companies, etc., its purposes were as follows:

"For promoting and giving *aid* to horticultural and agricultural associations, and owning real and personal property for that purpose; for erecting necessary buildings on said property or real estate, and for leasing such real estate to horticultural and agricultural associations."

The capital of the corporation was $6,000 and consisted of 600 shares of $10 each. Subsequently, the capital was increased to $10,000. The company acquired 80 acres of land at Hartford, Michigan, and

erected some buildings thereon. It thus used up all its capital.

Almost contemporaneously with the formation of the Hartford Fair Grounds Association as a profit corporation, it was realized that in order to carry out its purposes and at the same time secure exemption from taxation, it would be necessary to form a nonprofit corporation. For this reason, the defendant Van Buren County Agricultural & Horticultural Society was organized as a nonprofit corporation, and a verbal lease, and subsequently a written lease, was made by the profit corporation of all of its property to the nonprofit corporation.

The organizers of the two corporations were almost identical. While the list of stockholders in the nonprofit corporation must have been much larger than in the profit corporation, it appears from the record that the board of directors and the officers of the two corporations were the same at the time of the beginning of this suit and for a long time previous thereto.

No dividends were ever paid by either corporation. If moneys were earned by the agricultural society during any year, they were used for the purpose of repairing old buildings and erecting new ones. Sufficient capital was retained at the end of each year so as to enable the agricultural society to run a track meet and county fair the following year. The fair association simply had the satisfaction of knowing that its purposes were being well carried out, although there was no direct financial return to it. Notwithstanding the fact that the fair association had been organized under the law providing for profit corporations, evidently no one expected dividends from either company.

A lease was made from time to time by the fair association to the agricultural society for a nominal

amount, to wit, $1 per year, but in addition thereto the agricultural society also bound itself to pay all taxes, to look after the upkeep of the buildings, and to pay the premiums to keep them insured against loss by fire and cyclone. The record shows beyond any doubt that the agricultural society would have lost a large amount of money and would not have been able to carry on even under the lease, were it not for the fact that it received both State and county subsidies and was freed from State, county and Federal taxes.

The agricultural society made substantial improvements on the property belonging to the fair association, and it enabled the fair association to carry on its purposes as defined in its charter in a proper manner, and probably in the only manner the purposes could have been carried out. Had the fair association carried on the fair for profit, without receiving the benefit of exemption from taxation and State and county subsidies, it would have lost a considerable amount of money and would soon have exhausted its capital. The lease at a nominal figure, plus taxes, repairs, and insurance premiums to be paid by the lessee, has continued since the incorporation of the two companies. During that time the testimony shows that the property of the fair association has increased in value to the sum of $40,000, notwithstanding the fact that the land had not materially increased in value. The testimony shows that the land was comparatively poor for agricultural purposes, and that the buildings erected on it for fair purposes would have to be removed in order to again use the land for agricultural purposes; that the business of running a county fair is not one that could be carried on by an individual or a private association for profit, and that the buildings, unless used for fair purposes, would be of

negligible value and might be a detriment were the property to be again used for agricultural purposes.

The officers of the fair association and the agricultural society were the same, and the lease which was executed between them was signed on behalf of each company by the same officers. There is no question but that, under these circumstances, the law should scrutinize the dealings between the parties most carefully. However, the testimony shows that the dealings between the two companies were absolutely honest, fair, and for the benefit of each of the parties. The testimony further indicates that the fair association was only enabled to carry out the purposes for which it was organized through the medium of the agricultural society.

Plaintiff did not become a stockholder in either company at the time of the organization. It was some 12 years later that he bought either 28 or 32 shares of stock from a half dozen or more stockholders in the fair association. The stock had a par value of $10 a share, and while the record is not clear as to what plaintiff paid for the stock, it inferentially shows that plaintiff paid only a nominal sum for the stock.

Plaintiff testified positively that he had known for years prior to the purchase of the stock that the agricultural society was obtaining subsidies from the State and county, that the property was not on the tax list, and that he "presumed" that he knew prior to the purchase of the stock that had the association been run as a private corporation it would have been required to pay taxes amounting to about $8,000. The amount received from subsidies was $20,374.48. Plaintiff further testified that he was informed immediately after he bought the stock that the company could not pay any dividends, and that the company would have become bankrupt if it had

to pay taxes and did not receive the subsidies from the State and county.

The record shows there was no written lease between the two companies in the earlier years, but that on June 25, 1924, a lease was made for the rental hereinbefore mentioned, for the term of five years from the date thereof, and on March 26, 1927, a lease was made for 25 years from that date, the new lease taking the place of the old lease. These leases were made by the board of directors of the association.

The certificates representing the stock purchased by plaintiff were indorsed in blank by the transferor and no new certificates were ever issued to plaintiff. He, however, attended stockholders' meetings of the fair association, where the affairs of the corporation were discussed, and there is persuasive testimony that the terms of the lease were discussed at the meetings. Plaintiff testified that instead of issuing new certificates upon his surrendering the old ones, the names of plaintiff's transferors were struck out and plaintiff's name inserted with a lead pencil in their place on the books of the corporation.

Plaintiff brings this suit in equity against both the fair association and the agricultural society, asking that the 25-year lease be declared void; that the agricultural society be required to account to the fair association for the reasonable value of the premises during the period the agricultural society occupied the premises; that the fair association be dissolved and a receiver thereof be appointed, with instructions to collect the assets and reduce the same to cash and distribute the same to the stockholders of the corporations.

In addition to refuting plaintiff's claims and denying that he is entitled to any relief whatsoever, de-

fendants assert that plaintiff is in no position to assert any claim inasmuch as he is not a stockholder of record in the fair association as no stock has ever been issued to him.

The circuit judge held that the plaintiff had a right to bring suit inasmuch as he was the equitable owner of the stock, had been allowed to vote at stockholders' meetings, and his name had been written in the stock book of the corporation. The circuit judge was correct in his ruling.

The circuit judge held that the lease for 25 years was void. There was no necessity for giving a lease for this length of time, under the conditions as hereinbefore set forth. It amounted practically to a sale of the assets and without any action by the stockholders.

Notwithstanding the fact that the fair association was organized for public purposes, this should not preclude it from realizing a profit on its investment at some future time. A provident loan association or a housing corporation or other companies might be formed for a public purpose, and nevertheless be able to pay a fair return to their stockholders. They, however, do not look to the State and county for subsidies and tax exemptions.

The evidence in this case shows that the consideration in the lease was adequate and proper. However, it might develop during the balance of the term of the corporate franchise or a renewal thereof, that the agricultural society or some other responsible lessee might be able to run a fair at a profit without any subsidies and exemption from taxation. In that event, if a more profitable offer for a lease could be secured, the fair association should not be in a position where it would forever be precluded from ac-

cepting such offer. The judge was correct in holding that the lease for 25 years was void.

We further find that the circuit judge was correct in ruling that plaintiff was not entitled to any further relief. The testimony in the case shows that the affairs of both companies were run fairly, honestly, and in a manner so as to fully carry out the purposes of the fair association. There is no testimony whatsoever that shows any unfair dealing between the two companies, or that a single penny was diverted by the officers, directors, or stockholders of the fair association. On the contrary, it shows that they made a lease that was eminently fair, and that the agricultural society would have lost a very large amount of money and been obliged to suspend had it not received State and county subsidies and exemption from taxation. It might be possible that at the expiration of the present corporate existence, the stockholders might vote to dissolve the corporation and divide the assets, instead of renewing the charter. In that event, they should be in a position to do so without being restricted by a lease for $1 a year for a further period of ten years beyond its corporate life. The agricultural society used all of its moneys for the purpose of conducting fairs and for the repairing of old buildings and the erection of new ones on the demised premises. Under the circumstances, the rental was adequate. There was absolutely no fraud shown. On the contrary, there was good faith and good business judgment shown in the entire transaction. Plaintiff has no good reason to complain.

The decision of the lower court is affirmed, with costs to defendants.

NORTH, C. J., and FEAD, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.